UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PAMELA and MICHAEL HENSLEY,

    Plaintiff(s),

  v.

UNITED STATES OF AMERICA,

    Defendant(s).

NO. C04-302P

FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS MATTER having come for trial before the Honorable Marsha J. Pechman commencing on April 17, 2006, the parties being represented by their counsel: Paul Wallstrom and Lincoln Sieler, for Plaintiffs, and Robert Brouillard of the U.S. Attorney's Office, for Defendant; the Court having heard the testimony of witnesses, admitted exhibits into evidence, reviewed the court file, and having heard argument of counsel; the parties having rested following the presentation of their cases, the Court hereby reaches the following findings of fact and conclusions of law. Should a finding of fact more properly be considered a conclusion of law, it should be so construed. Similarly, if a conclusion of law is more appropriately a finding of fact, it should be so construed.

NOW, THEREFORE, the Court enters the following Findings of Fact and Conclusions of Law:

**FINDINGS OF FACT**

**The Collision**

1.     On November 6, 2000, Pamela Hensley was driving her car on the Whidbey Island Naval Air Station. At the moment of impact, she was stopped, allowing oncoming cars to pass before turning left. Her left turn signal was on.

FINDINGS AND CONCLUSIONS - 1

2. Edward C. Eich, a lieutenant in the U.S. Navy at the time, was also driving on that day. He was following Ms. Hensley in the same lane of travel, when he hit the rear end of her car, failing to stop. He was traveling 15-20 miles per hour at the time of the collision. There is no evidence of alcohol consumption on Mr. Eich's part.

3. Mr. Eich contacted the military police and provided his personal information. It was not until he was served with the lawsuit and consulted a friend who was a military lawyer that he knew or appreciated that the fact that he was on base attending a training session of the Navy was of any factual or legal significance.

4. Ms. Hensley's car was not driveable after the impact and it had to be dragged from the lane of travel.

5. Ms. Hensley was taken to the hospital by ambulance.

6. The government has stipulated that Mr. Eich was within the scope of his employment with the U.S. Navy at the time of impact.

**Ms. Hensley Prior to Nov. 6, 2000**

7. Ms. Hensley was 44.35 years old on the day of the collision. Her date of birth is July 2, 1956.

8. She is married to Michael Hensley. They married each other for the second time in 1990. Their first marriage ended in divorce. Ms. Hensley has two daughters from her intervening marriage to her second husband. After the remarriage, Mr. Hensley played a significant role in the family as a father figure to his two step-daughters.

9. Ms. Hensley was trained as a hairdresser and had practiced that profession and maintained her licenses for 26 years. Immediately prior to November 6, 2000 she was working 7 days every two weeks, alternating 3 days one week and four days the next. Her income was growing in the years immediately preceding the impact. She was well-liked by her employer and considered an excellent employee. There were no problems with her attendance or attention to her work. Ms. Hensley and her employer had plans for Ms. Hensley to purchase the business upon her employer's retirement.

FINDINGS AND CONCLUSIONS - 2

10. In addition to her reported Social Security earnings, Ms. Hensley earned approximately $50 a week in tips from her customers.

11. Ms. Hensley performed all household chores, including cooking, shopping, cleaning, laundry, sewing, driving the children and managing household expenses. Mr. Hensley's Navy career required that he be out to sea for long periods of time and it fell to Ms. Hensley to maintain, manage and care for the family home. In addition, she was involved in gardening, household maintenance and construction projects.

12. Ms. Hensley also provided household care and services to her live-in mother-in-law. She provided meals, mobility assistance, errands and entertainment to her mother-in-law.

13. In 2000, prior to the impact, Ms. Hensley traveled with her mother-in-law to Hawaii and Hong Kong and managed all travel arrangements, luggage transfers and mobility support for her mother-in-law.

14. Ms. Hensley's personal time was occupied with sewing, Bible study, bowling, snorkeling, scuba diving and babysitting her infant grandchildren.

15. Ms. Hensley had significant health issues, including diabetes, morbid obesity, hypertension and a smoking habit of one pack a day. In addition, she suffered from depression which was controlled with antidepressant medication. None of these conditions impacted her daily activities or work.

16. Throughout her life, Ms. Hensley suffered back pain or a "stiff neck" periodically.

17. At the time of the incident, there was no back pain or evidence of paresthesia causing any pain or disability.

**Treatment Following November 6, 2000**

18. Ms. Hensley was taken from the accident to the Naval Hospital and she received treatment care from a series of Navy doctors.

19. Ms. Hensley was treated for back strain, left face and body numbness and chronic pain syndrome. Her depression was aggravated and has become worse over time.

FINDINGS AND CONCLUSIONS - 3

20. Treating physicians Drs. Hwang, Robinson and Kozmary testified that Ms. Hensley's back pain, numbness and chronic pain syndrome were causally related to the motor vehicle accident of November 6, 2000. The government offered no expert testimony to contradict the doctors' opinions.

21. All doctors have found that Ms. Hensley cannot work. No contrary opinion was offered by the government.

22. Dr. Robinson supported Ms. Hensley's request for a permanent disability rating from the Social Security Administration. Dr. Robinson concluded that, because of the accident of November 2000, her overriding problem is chronic pain syndrome, and he concurred with the consulting neurologist that she should be given consideration for permanent disability. The government offered no expert opinion to contradict this opinion.

23. Ms. Hensley has been classified as totally and permanently disabled by the Social Security Administration and she cannot work now or in the future.

24. Between the time of the incident on November 6, 2000 and January of 2006, Ms. Hensley's daily activities were restricted. She was still able to travel with assistance, do some light housekeeping occasionally, drive a car and interact with her friends and family on social occasions. Her fatigue and pain had to be controlled with rest and medication. Her depression became more and more evident.

25. In January 2006, she underwent an epidural steroid injection to assist with her chronic pain syndrome. This treatment worsened her pain and caused a blood clot to develop around her spinal cord.

26. This hematoma has reduced Ms. Hensley's activity level. She is in almost continual pain and spends nearly all her time in bed. Her household activities are completely restricted and she must use a wheelchair in order to be mobile. There has been a severe reduction in her interaction with friends and family.

27. The Court finds Ms. Hensley's characterization of her condition to be truthful.

FINDINGS AND CONCLUSIONS  - 4

28. Ms. Hensley's increased pain as a result of the January 2006 injection is the direct result of medical treatment necessary to control the chronic pain syndrome caused by the motor vehicle accident of November 6, 2000.

29. According to Dr. Kozmary, Ms. Hensley is expected to return to her pre-January 2006 level of pain and activity within 6 months (October 2006).

**Loss of Consortium**

30. Prior to the motor vehicle accident, the Hensleys had a close and loving relationship. Their first marriage to each other was marred by alcohol and domestic violence abuse. These problems were not present in their second marriage to each other. They enjoyed an active sexual relationship. Their division of household work fell heavily on Ms. Hensley due to long absences occasioned by the military assignments of Mr. Hensley. Prior to the motor vehicle accident, Mr. Hensley had planned to spend 30 years in the military.

31. As a direct result of the motor vehicle accident, Mr. Hensley retired after only 20 years in the military in order to be at home to assist his wife. Long deployments are inconsistent with the attention she requires.

32. The parties' sexual relationship and pleasure has become diminished. Ms. Hensley is no longer an active partner in the activities of the marriage and must have assistance with nearly all activities of daily living.

**Economic Damage Calculation**

33. Pamela Hensley's date of birth is July 2, 1956. She was 44.35 years of age at the time she was injured.

34. Her life expectancy at the time of injury was 37.57 years.

35. Her work life expectancy for her age and education is 17.32 years with a predicted retirement age of 61.67.

36. But for the injury, she would have continued to work as a cosmetologist.

FINDINGS AND CONCLUSIONS - 5

37. The average earnings for a cosmetologist working in the Oak Harbor, Washington area (assuming full-time employment) is $27,500.

38. Past medical expenses claimed of $20,130.30 are reasonable and necessary and are causally related to the motor vehicle accident of November 6, 2000.

39. Future medical expenses will require lifelong monthly doctors' visits costing $222 per visit, and $600 per month in medication expenses.

40. The Court accepts the calculations of Dr. Silverberg regarding the calculation of household services as fair and accurate. The Court accepts the 1% discount rate to reduce that figure to present value. The Court accepts the calculation of the tax rate. The government has offered no testimony or evidence on the economic calculation.

41. The Court finds Ms. Hensley's economic damages as follows:

|  | **November 6 2000 to April 17 2006** | **April 17 2006 to End of Life Expectancy** | **Total** |
|---|---|---|---|
| Earnings/Lost Earning Capacity | $138,223 | $301,024 | $439,247 |
| Tax on Earnings | (5,387) | (13,755) | (19,142) |
| Household Services | 117,059 | 832,024 | 949,083 |
| Tax on Interest | ----------- | 45,810 | 45,810 |
| **TOTAL** | **$249,895** | **$1,165,163** | **$1,415,058** |

42. Future medical expenses, calculated to present value using the 1% discount rate, equals $268,987.

**Non-economic Past and Future Damages**

43. For loss of consortium, Mr. Hensley's damages are $100,000.

44. For Ms. Hensley's pain and suffering and her loss of enjoyment of life, the damages are $500,000.

**Administrative Claim**

FINDINGS AND CONCLUSIONS - 6

45. The parties have stipulated that the administrative claim made in November 2004 was $1.4 million for Ms. Hensley and $200,000 for Mr. Hensley.

46. In January 2006, Ms. Hensley suffered an increase in pain and loss of ability to enjoy life. Her depression deepened and her mobility decreased. This change in condition was caused by the development of the hematoma after an injection which was supposed to reduce her pain. This is newly discovered evidence which could not have been known to Plaintiffs at the time they filed their administrative claim. This additional pain and suffering has further damaged Ms. Hensley in the amount of $50,000.

## CONCLUSIONS OF LAW

**Jurisdiction, Venue, and Applicable Law**

1. The Court has jurisdiction over the subject matter and parties to this action based on the Federal Tort Claims Act, 28 U.S.C. § 1364(b), 28 U.S.C. §§ 2671-2680 and 28 U.S.C. § 1331, and venue is proper.

2. Washington law applies with respect to all claims asserted in this case.

3. The Court incorporates by reference its prior orders dated September 21, 2004 (Dkt. No. 27) and March 13, 2006 (Dkt. No. 91) concerning the applicable statute of limitations and the issue of the Court's jurisdiction over Plaintiffs' claims.

4. The standard of proof is a preponderance of the evidence.

5. The government is liable for the negligence of Edward Eich as he was within the scope of his employment as a U.S. Naval officer at the time of the collision on November 6, 2000.

6. Mr. Eich was negligent in the operation of his car, resulting in the collision of November 6, 2000. The following car has the duty to avoid colliding with the forward car.

FINDINGS AND CONCLUSIONS - 7

7. Damages have been awarded applying Washington law, including the application of Washington Pattern Jury Instructions - Civil WPI 30.17 and WPI 30.18. Damages were proved at the time of trial in the trial in the amounts of

| | | |
|---|---|---|
| **Mr. Hensley** | Loss of consortium | $100,000 |
| **Ms. Hensley** | Non-economic | $500,000 |
| | Economic | $1,415,058 |
| | Post-claim filing | $50,000 |

8. The plaintiffs are limited in their recovery to the amount of their administrative claim, except where the increased amount is based upon newly discovered evidence. Judgment should issue against the United States in the amount of $1,450,000 for Ms. Hensley and $100,000 for Mr. Hensley; the additional $50,000 for Ms. Hensley is awarded for increased pain and suffering due to the January 2006 injection.

Plaintiffs are directed to prepare a judgment. Costs bills are to be directed to the Clerk of the Court.

Dated: May 1, 2006

_Marsha J. Pechman_
Marsha J. Pechman
U.S. District Judge

FINDINGS AND CONCLUSIONS - 8